IN THE MATTER OF COMMUTER OPERATING AGENCY'S DETERMINATION OF FINANCIAL RESULTS TO CARRIERS FOR THE CALENDAR YEAR 1977.

Superior Court of New Jersey
Appellate Division

Argued October 31, 1978—Remanded December 4, 1978—Submitted After Remand January 17, 1979—Decided March 1, 1979.

Before Judges LYNCH, CRANE and HORN.

*Messrs. John D'Amico, Jr.* and *Marc F. Stuart,* co-counsel, argued the cause for appellants.

*Mr. Kenneth S. Levy,* Deputy Attorney General, argued the cause for respondent (*Mr. John J. Degnan,* Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Messrs. Levy* and *Larry Filler,* Deputy Attorneys General, on the brief).

PER CURIAM. By our opinion of December 4, 1978, 164 N. J. Super. 311 (1978), we remanded this matter to the Commuter Operating Agency (COA) for findings of fact and conclusions which were to determine what the books and records of Conrail show for the calendar year 1977 as to: (1) the financial results to Conrail from providing passenger service in New Jersey for that year; (2) whether there was a loss in that year from providing such service; (3) the amount of such loss and how it was calculated; (4) why a fare increase averaging 10% starting October 1, 1978 was appropriate to offset all or part of any loss shown, and (5) the extent to which said increase will offset any such loss.

Pursuant to said remand there was submitted to COA by the Director of the Office of Policy Analysis, at its meeting of January 12, 1979, a document entitled "Supplement to Commuter Operating Agency Determination of Financial Results to Carriers for the Calendar Year 1977," dated January 12, 1979. That document supplemented the "Annual Determination" issued by COA on June 14, 1978 which this court in its prior opinion considered to have fallen short of the requirement of *N. J. S. A.* 27:1A–17 that the COA (1) investigate and determine the "financial results" to Conrail from providing passenger service in New Jersey for the calendar year 1977 to determine where there was a "loss" during that year, and (2) if such loss is found, whether it is appropriate to increase fares to offset all or part of any such loss.

Pursuant to our previous opinion COA, at its meeting of January 12, 1979, adopted its "Revised Annual Determination of Financial Results to Carriers for Calendar Year

1977" (hereafter "Revised Annual Determination"). In summary it contained the following conclusions of COA:

1. The financial results to Conrail from providing passenger service during Calendar Year 1977 are as follows: For all services operated by Conrail total costs were $98,750,000.00 and total revenues were $41,920,000.00. Therefore, for Calendar Year 1977, Conrail's operation of rail service in New Jersey resulted in a loss of $56,830,000.00.

2. In order to offset part of the foregoing loss shown for Calendar Year 1977, the Agency determines that it is reasonable to impose a 10% fare increase effective October 1, 1978. This fare increase will offset the loss shown by approximately $2.4 million.

3. A 10% fare increase is reasonable and appropriate in light of the minimum impact upon ridership, the cost of comparable rail services, the substantial increase in the cost of New Jersey rail service since 1975, the absence of any fare increase since 1975 to meet the rising costs, the increase in consumer costs in other areas and the comparable cost of other transportation modes.

4. The 10% fare increase will be implemented in a manner to achieve a uniform fare structure on all agency supported rail lines for all ticket classes.

■ Appellants have filed a letter memorandum contending that the "Revised Annual Determination" still fails to satisfy the statutory requirements to justify the fare increase previously ordered. They contend that the total revenues set forth in the "Revised Annual Determination" in the sum of $41,920,000 fails to include a subsidy of $61.524,000[1] received by Conrail in 1977 pursuant to *N. J. S. A.* 27:1A–18 (b). Adding said "subsidy," say appellants, would raise total receipts from $41,920,000 to $103,444,000 which, when considered against costs of $98,750,000 for 1977, demonstrates that Conrail received an "excess payment" of $4,694,000 and therefore a fare increase was not justified. As appellants' brief expresses their contention, "A fare increase

---

[1] In an affidavit, filed January 24, 1979, a research examiner for the New Jersey Department of Transportation disputes this figure and asserts that the subsidy amounted to $54,017,741.

is authorized under *N. J. S. A.* 27:1A–17 only if the revenues *and subsidies* received by the carrier fall short of the cost of providing passenger service." (Emphasis added).

We disagree. *N. J. S. A.* 27:1A–17 provides:

> The agency annually shall investigate and determine the *financial results* to each carrier *from providing passenger service* during the previous calendar year and determine what action is required for each carrier to offset all or part of any loss shown. Such determination may include but shall not be limited to (a) changes in service, fares, operating procedures and routings (b) improvements to capital facilities and (c) compensation by the State for service to be rendered under a contract. [Emphasis added]

Appellants' argument that "subsidies" received by a carrier are to be considered as "revenues" in determining whether a loss exists for a particular calendar year is without merit. Such subsidies do not relate to the financial results from "providing passenger service." Rather, they relate to the actions of the Federal or State Government in providing funds to *supplement* the financial results from providing passenger service in this State for such a year. This is consonant with the principal purpose of the Transportation, Act of 1966, *N. J. S. A.* 27:1A–1 *et seq., i. e.,* to conserve passenger service, especially through commuter railroads, which could not be maintained without subsidy assistance. It is in the light of the purpose of the entire act that we must construe its provisions as contained in *N. J. S. A.* 27:1A–17.

Appellants point to *N. J. S. A.* 27:1A–18(b), which provides that no contract with a carrier shall provide for payments by the State "in excess of the full cost of such passenger service less such setoffs and deductions as provided for in this act * * *." They argue that the "excess payment" resulting from revenue and subsidy for 1977 are violative of that section. The fact that subsidy payments for the year 1977 may have been in excess of the payment allowed by law is irrelevant to COA's power to increase fares under *N. J. S. A.* 27:1A–17. The issue before this court is

framed by that section, *i. e.*, whether consideration of the "financial results from providing passenger service" in this State for 1977 justify the fare increases. The issue as to any excessive payments of subsidies is not before this court. If there be such an excess payment, it is a matter for consideration by COA or other state agencies for such remedies as may be deemed to be appropriate.

 For the foregoing reasons and also in recognition of the presumption of reasonableness which attaches to the action of an administrative agency such as COA, see *In the matter of Public Hearings*, 142 *N. J. Super.* 136, 156 (App. Div. 1976), certif. den. 72 *N. J.* 457 (1976), we affirm its action in authorizing the 10% increase in passenger fares effective October 1, 1978.